**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LANEICE S. MCFADDIN and MELISSA L. STEWART,<br><br>        Plaintiffs,<br><br>        vs.<br><br>DAVID W. PUMPHREY DDS PC, also known as Pumphrey Periodontics and doing business as Pumphrey Periodontics and Dental Implant Therapy, and DAVID W. PUMPHREY,<br><br>        Defendants. | CIV. ACTION NO._____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COME NOW Laneice S. McFaddin and Melissa L. Stewart (*collectively*, "Plaintiffs"), by and through the Undersigned Counsel of Record, and hereby file this Complaint for Damages against Defendants David W. Pumphrey DDS PC, also known as Pumphrey Periodontics and doing business as Pumphrey Periodontics and Dental Implant Therapy, and David W Pumphrey, respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

1.

Laneice S. McFaddin and Melissa L. Stewart bring these claims pursuant to (a) 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid overtime wages and retaliation, as well as (b) the laws of the State of Georgia for breach of contract, assault, battery, negligent retention and supervision, piercing the corporate veil, litigation expenses, and punitive damages.

2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II.  PARTIES

4.

Melissa L. Stewart ("Stewart") is a forty-four (44) year-old African-American female, who is a citizen of the State of Georgia, resident of Cobb County, Georgia, subject to the jurisdiction of this Court, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Stewart was an "employee" of Defendants within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

6.

Laneice S. McFaddin ("McFaddin") is a twenty-nine (29) year-old African-American female, who is a citizen of the State of Georgia, resident of Gwinnett County, Georgia, subject to the jurisdiction of this Court, and entitled to bring the claims asserted in the above-captioned case.

7.

At all relevant times, McFaddin was an "employee" of Defendants within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203.

8.

David W. Pumphrey DDS PC, also known as Pumphrey Periodontics and doing business as Pumphrey Periodontics and Dental Implant Therapy, ("Pumphrey Periodontics") is a Georgia professional corporation affecting inter-State commerce and subject to the Court's jurisdiction with a principle office located in Atlanta, Georgia.

9.

Pumphrey Periodontics operates a dental practice located at 300 West Wieuca Road, Building 2 #100, Atlanta, Georgia 30342.

10.

Pumphrey Periodontics is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203(d).

11.

Pumphrey Periodontics is covered by the FLSA because Pumphrey Periodontics employs individuals, engaged in inter-State commerce and/or the production of goods for inter-State commerce, with annual gross sales and/or business volume of at least $500,000.00.

12.

Pumphrey Periodontics may be served with process through its Registered Agent, Stuart J. Oberman, at 147 Lee Byrd Road, Loganville, Georgia 30052.

13.

Pumphrey Periodontics may also be served with process through its Registered Agent, Andrew Shaul, at 2700 Paces Ferry Road Unit 906, Atlanta, Georgia 30339.

14.

David W. Pumphrey, DDS ("Dr. Pumphrey")—Caucasian male—is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

15.

Dr. Pumphrey is and was, at all relevant times, Pumphrey Periodontics' owner and operator involved in the day-to-day operation of Pumphrey Periodontics and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Pumphrey Periodontics.

16.

At all relevant times, Dr. Pumphrey supervised Plaintiffs and participated in the unlawful and tortious conduct described herein.

17.

Dr. Pumphrey may be served with process at Pumphrey Periodontics located at 300 West Wieuca Road, Building 2 #100, Atlanta, Georgia 30342.

18.

During the course of Plaintiffs' employment, Pumphrey Periodontics and Dr. Pumphrey *jointly* supervised and managed Plaintiffs, determined Plaintiffs' rate and method of compensation, exercised authority to hire and terminate Plaintiffs' employment, prepared Plaintiffs' payroll and schedule, invested in Plaintiffs' equipment, determined Plaintiffs' permanence and exclusiveness, as well as otherwise controlled the terms and conditions of Plaintiffs' employment.

### III.  FACTUAL ALLEGATIONS

**A.    Factual Allegations Common to Both Plaintiffs**

19.

Pumphrey Periodontics provides periodontic, implant, and aesthetic periodontal therapy services.

20.

Dr. Pumphrey is a Doctor of Dental Surgery, as well as the sole owner and operator, chief financial officer, chief executive officer, and secretary of Pumphrey Periodontics.

21.

Upon information and belief, since formation, Pumphrey Periodontics has failed to regularly adhere to or follow prevailing corporate practices, Dr. Pumphrey has disregarded the corporate entity of Pumphrey Periodontics to make it a mere instrumentality of Dr. Pumphrey's personal affairs, and there has been a unity of interest and ownership such that the separate personalities of Defendants do not exist.

22.

Pumphrey Periodontics has been administratively dissolved by the Georgia Secretary of State.

23.

Defendants have a history of known staffing and employment-related issues. For example, Angie K, a former-patient who gave Pumphrey a 1-star Yelp review, noted "The other issues I won't go into here regarding his poor listening and revolving staff members over one year are a reflection of the practice."  Another

former patient, Tree of Life who gave a 1-star Google review, noted, "Thumbs down. Learn how to treat people."  Likewise, Tali Pariser stated, "I'm beyond dissatisfied and disappointed with the clinic, the doctor and the unprofessional approach he has." Not surprisingly, Defendants' unprofessional customer service has spilled over into the treatment of staff and employees.

**B.    Factual Allegations Related to Stewart**

24.

Stewart is a forty-four (44) year-old African-American female.

25.

Following high school, Stewart obtained a dental assistant certificate from Lincoln Technical College.

26.

Moreover, Stewart served in several professional positions, including, but not limited to, Financial Advisor with Chase Bank and Skylight Financial, Surgical Dental Assistant with Northside Periodontics & Implants, Oral Surgery Assistant with Great Expressions Dental, as well as Surgical Assistant with Buckhead Periodontics.

27.

In or about April 2020, Stewart agreed to work as a Dental Assistant, responsible for maintaining dental records, performing routine cleanings, assisting Dr. Pumphrey with complex dental procedures, processing x-rays, scheduling appointments, completing patient billing, advising patients related to dental hygiene, as well as other duties assigned by Dr. Pumphrey, at Pumphrey Periodontics for $25.00 per hour.

28.

Despite the agreement between Stewart and Pumphrey Periodontics, Stewart's first pay check only stated that Stewart was paid $22.50 per hour.  When Stewart complained to the Office Manager, Tristan, and Dr. Pumphrey, the Office Manager stated that Pumphrey Periodontics engaged in this same bait-and-switch, which resulted in high turn-over.  After Pumphrey Periodontics failed to correct the mistake in Stewart's second check, Stewart gave two (2) weeks' notice.  Faced with Stewart's notice of resignation, Dr. Pumphrey again agreed to compensate at Stewart $25.00 per hour.  The agreement was retroactive and prospective.  However, based upon Pumphrey Periodontics' initial breach of contract, Stewart was forced to cancel monthly automatic payments to avoid overdraft fees, resulting in extreme and severe emotional distress.

29.

In addition to the breach of contract, immediately upon the commencement of employment, Dr. Pumphrey began subjecting Stewart to his known harassment and mistreatment.  On almost a daily basis, Dr. Pumphrey cursed, disrespected, and yelled at Stewart.  Whenever Stewart advised Dr. Pumphrey of her schedule, Dr. Pumphrey would yell "Fuck" and angrily throw instruments on the floor, forcing employees to clean the closets and rooms.  As a new employee in desperate need of work during a global pandemic, Stewart simply complied with every professional request.

30.

Moreover, Dr. Pumphrey repeatedly assaulted and battered Stewart without cause or justification.  For example, whenever Dr. Pumphrey became emotional, which was an almost daily occurrence, Dr. Pumphrey would throw equipment at Stewart while making degrading and insulting declarations, such as, "You act like you're smart, but your thinking is not smart."  When a technician attempted to repair an X-ray machine, Dr. Pumphrey angrily threw a manual at Stewart.  While verbally berating Stewart during a procedure on an occasion, Dr. Pumphrey angrily pushed Stewart's hand, causing a mirror to hit a patient's tooth and poke Stewart's hand.

Because an assortment of blood-borne diseases can be transmitted as a result of such incidents, this assault and battery was particularly traumatic.

31.

Likewise, Dr. Pumphrey needlessly criticized Stewart when following Stewart around the practice.  For example, when Stewart performed professional tasks, Dr. Pumphrey would state, "You can't do nothing right" and "If she doesn't do what Pumphrey tell her to do, nobody else will hire her."  Dr. Pumphrey routinely spied on Stewart and other employees from his vehicle.  Finally, Stewart summoned the courage to complain to Dr. Pumphrey in a meeting with McFaddin and another associate, Dr. Smith.

32.

Despite Stewart's diligent and loyal performance in the face of a hostile work environment, Defendants refused to compensate Stewart at the FLSA-mandated rates.  While employed by Defendants, Stewart's work schedule varied on a daily basis depending on the needs of Defendants' clients, however, Defendants required Stewart to generally work Monday through Thursday and, occasionally, Friday. Although Stewart worked, on average eighty-five (85) hours biweekly, Defendants often refused and/or failed to pay Stewart overtime at the FLSA-mandated rate for hours worked over forty (40) in a given workweek.

33.

While Stewart provided Dental Assistant services at Pumphrey Periodontics, Defendants required, and were aware that, Stewart worked, on average, eighty-five (85) hours biweekly without compensation at the FLSA-mandated rates.

34.

Because Defendants failed and/or refused to compensate at the FLSA-mandated rate, Stewart and other employees at Pumphrey Periodontics complained to Dr. Pumphrey and the Office Manager, Tristan, about unpaid overtime wages, professional mistreatment, and unlawful employment practices.

35.

On or about June 14, 2021, Dr. Pumphrey announced, via e-mail, that he was taking an extended leave to complete substance abuse treatment.  When returning from leave in or about September 2021, Dr. Pumphrey discovered that Pumphrey Periodontics was in disarray, that the practice lost several patients, as well as that the business relationships with other physicians and vendors had deteriorated.  To induce Stewart to continue working as a Dental Assistant for Pumphrey Periodontics, Dr. Pumphrey increased Stewart's compensation to $28.00 per hour. However, Pumphrey Periodontics still failed and/or refused to compensate Stewart at FLSA-mandate rates despite Stewart's continued complaints.

36.

Faced with Dr. Pumphrey's continued harassment and attacks, as well as Defendants refusal to compensate Stewart at the FLSA-mandated rates, in November 2021, Stewart gave two-weeks' notice—November 23, 2021, would be Stewart's last day at the practice.

37.

When Dr. Pumphrey asked Stewart about his cleaning efforts on November 16, 2021, Stewart honestly responded that Dr. Pumphrey left dirty and unsanitary instruments in the presence of patients.  Keeping with the pattern and practice of harassment and assault, an enraged Dr. Pumphrey threw the dirty and unsanitary instruments in a sink before yelling, "You put them where you want since you don't like what I did."  When Stewart declined to engage Dr. Pumphrey's unprofessional and threatening tirade, Dr. Pumphrey screamed, "Just get out!"—terminating Stewart's employment.

38.

Based upon Dr. Pumphrey's constant, outrageous, and extreme harassment and mistreatment, Stewart suffered severe emotional stress and anxiety, necessitating treatment and medication, Propranolol.

39.

Defendants' failure to properly compensate Stewart at the agreed-upon annual salary and/or FLSA-mandated rates was knowing and willful.

40.

Defendants terminated Stewart employment and punished Stewart immediately after Stewart had the audacity to complain about unpaid wages and harassment at the hands of Defendants.

41.

As a result of Defendants' unlawful actions, Stewart has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

C.     **Factual Allegations Related to McFaddin**

42.

McFaddin is a twenty-nine (29) year-old African-American female.

43.

Following high school, McFaddin obtained attended Nassau Community College in Garden City, New York, where McFaddin studied Liberal Arts & Science, and McFaddin is currently attending Gwinnett Technical College, where McFaddin is studying Nursing.

44.

Moreover, McFaddin served in several professional positions, including, but not limited to, Direct Support Provider and Assistant Manager at AHRC, Direct Support Provider with Community Mainstreaming, Unit Service Associate with Northwell Health at Glen Cove Hospital, and Office Manager with Dental Symmetry.

45.

McFaddin possesses several certifications, including, but not limited to, personal care assistant, strategies for crisis intervention and prevention, approved medication administration personnel, and cardiopulmonary resuscitation.

46.

In or about June 2020, McFaddin began working at Pumphrey Periodontics as a Treatment Coordinator, responsible for preparing treatment plans and estimates to patients, scheduling patient appointments, managing schedules and patient flow, assisting patients with financial arrangements, handling treatment paperwork, communicating with patients, as well as other duties assigned by Dr. Pumphrey.

47.

Within weeks of the commencement of employment, Dr. Pumphrey began subjecting McFaddin to his known harassment and mistreatment.  On almost a daily

basis, Dr. Pumphrey cursed and disrespected McFaddin while constantly complaining about professional performance without cause or justification. For example, constantly and routinely berated and belittled McFaddin at the practice. Whenever upset, Dr. Pumphrey would say, "fuck," "dammit," and/or "shit," when speaking to McFaddin in the presence of co-workers and patients. Additionally, Dr. Pumphrey would snatch items from McFaddin's hands, aggressively confront McFaddin, and point his fingers at McFaddin in a threatening manner. As a new employee in desperate need of work during a global pandemic, McFaddin never complained about Dr. Pumphrey's assaults, batteries, or mistreatment and simply complied with every professional request.

48.

Despite being subjected to constant assaults, batteries, harassment, and mistreatment, McFaddin continued to diligently and professionally perform as a Treatment Coordinator at Pumphrey Periodontics.

49.

Although McFaddin desperately needed to maintain employment during the Global COVID-19 Pandemic, in or about March 2021, McFaddin finally summoned the courage to leave Pumphrey Periodontics. However, whenever McFaddin threatened to leave, Dr. Pumphrey offered more compensation to entice McFaddin

to stay at the practice.  Because staff turnover was rampant, Defendants engaged a consultant to improve the business, however, Dr. Pumphrey refused to implement the suggested improvements.

50.

Faced with Dr. Pumphrey's continued harassment and refusal to implement improvements, on or about April 9, 2021, McFaddin gave two-weeks' notice. Presented with McFaddin's resignation, Dr. Pumphrey offered, among other things, McFaddin a $2,500 bonus, increase in pay to $27.00 per hour, at least 72 hours biweekly, and improved professional treatment.  On or about April 27, 2021, McFaddin and Dr. Pumphrey executed a written agreement memorializing these terms before McFaddin took a brief vacation to move into a new home.

51.

In late May 2021, McFaddin returned to Pumphrey Periodontics. Immediately, Defendants breached the written agreement by refusing and/or failing to schedule McFaddin for the agreed-upon hours.  Likewise, Dr. Pumphrey continued to subject McFaddin to professional harassment and mistreatment without justification or cause.  Consequently, McFaddin began complaining about the breach of contract and stated the need for legal representation.

52.

On or about June 14, 2021, Dr. Pumphrey announced that he was taking an extended leave to complete substance abuse treatment.  In this regard, Dr. Pumphrey stated that, based upon their agreement, McFaddin could not leave Pumphrey Periodontics during the extended leave.  Nevertheless, Defendants refused and/or failed to compensate McFaddin pursuant to the terms of the agreement.

53.

Notwithstanding the agreement and Dr. Pumphrey's statement that McFaddin could not leave the practice, on June 15, 2021, Defendants' business consultant, Valerie Flowers ("Flowers"), called McFaddin into the office and terminated McFaddin's employment.  When McFaddin requested to continue employment, Dr. Pumphrey stated that McFaddin should immediately leave the practice.  Despite McFaddin's offer to train a replacement, Dr. Pumphrey declined the offer and instructed McFaddin to immediately leave the practice.

54.

When returning from leave in or about September 2021, Dr. Pumphrey discovered that Pumphrey Periodontics was in disarray, that the practice lost several patients, as well as that the business relationships with other physicians and vendors had deteriorated.

55.

Desperate to re-establish Pumphrey Periodontics' business, on or about October 10, 2021, Dr. Pumphrey sent McFaddin a text message, asking if McFaddin was available to talk.  After McFaddin agreed, on or about October 11, 2021, Dr. Pumphrey called to convince McFaddin to return to Pumphrey Periodontics. McFaddin requested compensation at $36.00 per hour, 80 hours of employment bi-weekly, paid vacations and holidays, as well as a reasonable period to rebuild the practice, respect, and transparency throughout the term of employment.  When Dr. Pumphrey agreed, McFaddin stated that she would send a contract memorializing said terms.  As promised, on or about October 14, 2021, McFaddin sent Dr. Pumphrey another written agreement memorializing the terms conveyed during the October 11, 2021, telephone conversation, however, the written agreement was not executed.  Nevertheless, on or about October 18, 2021, Dr. Pumphrey verbally agreed to the terms of employment and Defendants rehired McFaddin as Treatment Coordinator at Pumphrey Periodontics.

56.

On or about October 25, 2021, McFaddin returned to Pumphrey Periodontics, where McFaddin continued to provide diligent and competent Treatment Coordinator services, as well as immediately filled Defendants' schedule through January, re-established professional relationships with physicians, and developed the practice to full operation in accordance with the Parties' agreement.

57.

Despite McFaddin's competent and diligent professional performance, Dr. Pumphrey continued to professionally mistreat, disparage, and criticize McFaddin without justification in the presence of co-workers.  For example, during an office meeting on or about November 8, 2021, Dr. Pumphrey instructed McFaddin to sit with colleagues at a table in the kitchen, where Dr. Pumphrey stated that McFaddin was performing poorly, that Defendants were paying McFaddin too much, and that "someone like you" was not wanted at the practice.  McFaddin respectfully apologized, asserted that she was working hard, and stated that she would respect Dr. Pumphrey's wishes concerning her continued employment.

58.

Following the staff meeting on or about November 8, 2021, (two weeks after the recommencement of employment) Defendants again terminated McFaddin's

employment without cause or justification.  Unexpectantly, Dr. Pumphrey sent McFaddin a text message, stating, "Laneice, you are very talented.  I can only control my actions not yours, and with that I do not plan to rehire you at this time.  Tomorrow I will send you the hours that did not get deposited plus 4.5 hours.  Thank you for your assistance.  Dr P."  McFaddin responded, "I was rehired on the 18th, I will consider that text termination.  Thank you for the opportunity."  Dr. Pumphrey replied, "Laneice my decision to not rehire you is correct, you told the team in the kitchen that you would not be coming back.  I hate when employees quit with so much talent.  I truly hope you find a place that makes you happy."  Despite Dr. Pumphrey's assertions, Defendants were clearly terminating McFaddin's employment.

59.

Although Dr. Pumphrey stated he would pay McFaddin the next day, Defendants waited until November 15, 2021, when McFaddin was only paid for 38 hours (not the promised additional 4.5 hours) at the rate of $35.00 per hour (not the agreed upon $36.00 per hour).

60.

Based upon Dr. Pumphrey's constant, outrageous, and extreme harassment, mistreatment, assaults, and batteries, McFaddin suffered severe emotional stress, resulting in palpitations, *i.e.*, irregular, fluttering, pounding, and/or increased heart beats caused by stress, anxiety, and/or depression.   Ultimately, McFaddin was referred to a cardiologist, Dr. Edward E. Proctor.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF THE FLSA
(Stewart Against Defendants)

61.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay employees time and a half for hours an employee works in excess of a 40-hour workweek.

62.

During the relevant period, Stewart was an employee, within the meaning of the FLSA, of Defendants, who are employers and covered by the FLSA.

63.

During the relevant period, the relationship between Stewart and Defendants was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

64.

In or about April 2020, Stewart began working on behalf of Defendants at Pumphrey Periodontics, where Stewart provided Dental Assistant services and Defendants agreed to pay Stewart at the rate of $25.00 (and later $28.00) per hour.

65.

During the relevant time period, Stewart regularly worked on average eighty-five (85) hours biweekly and, therefore, Stewart was entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

66.

However, during the course of Stewart's employment, Defendants routinely and consistently failed to compensate Stewart at the FLSA-mandated rate for the hours worked in excess of forty (40) hours per workweek.

67.

Defendants knew, or showed reckless disregard for the fact, that Defendants failed to pay Stewart overtime compensation in violation of the FLSA.

68.

Defendants' actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Stewart at the mandated overtime rate.

69.

Defendants' conduct in violation of the FLSA was both willful and in bad faith.

70.

As the direct and proximate result of Defendants' intentional, willful, and unlawful conduct when refusing to compensate Stewart for the overtime hours worked, Stewart has suffered loss of income and other damages.

71.

Pursuant to the FLSA, 29 U.S.C. § 216, Stewart is entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE FLSA
### (Stewart Against Defendants)

72.

The FLSA prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA.

73.

During the relevant period, the relationship between Stewart and Defendants was an employer-employee relationship within the meaning of the FLSA, which covered Defendants, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Stewart by Defendants.

74.

Defendants unlawfully and knowingly failed to compensate Stewart at the rates mandated by the FLSA.

75.

Stewart complained to Defendants (and Defendants' agents) about unlawful employment practices in violation of the FLSA.

76.

Shortly after Stewart complained about Defendants' failure to compensate at the FLSA-mandate rates, Defendants subjected Stewart to a hostile work environment and then terminated Stewart's employment.

77.

The effect of Defendants' actions has been to suspend and deprive Stewart of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Stewart because of the exercise of Stewart's Federally-protected rights

78.

Defendants' adverse employment action against Stewart constitutes unlawful retaliation in violation of, *inter alia*, the FLSA.

79.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Stewart harm and/or were committed with reckless and wanton disregard of the harm caused to Stewart in derogation of Stewart's Federally-protected rights.

80.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

81.

The retaliation to which Stewart was subjected by Defendants entitles Stewart to all appropriate relief afforded under the law.

82.

As a result of Defendants' intentional and unlawful conduct, Stewart has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

83.

Defendants' actions with respect to Stewart have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Stewart is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNTS III AND IV:**
**ASSAULT AND BATTERY**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Plaintiffs Against Defendants)**

84.

Georgia law prohibits, among other things, intentional conduct causing physical harm to another person.

85.

Additionally, Georgia law prohibits, among other things, attempted batteries and/or conduct that places another person in reasonable apprehension of an immediate violent injury.

86.

At all relevant times, Dr. Pumphrey was employed by, owned, and operated Pumphrey Periodontics.

87.

During the course of employment, Plaintiffs were required to work under the instruction and direct supervision of Dr. Pumphrey at Pumphrey Periodontics.

88.

Despite Stewart's diligent and professional performance, Dr. Pumphrey cursed and yelled at Stewart, needlessly followed Stewart around the practice, threw instruments and manuals at Stewart, poked Stewart with a surgical instrument, as well as threw dirty and unsanitary instruments in a sink in Stewart's presence.

89.

Likewise, despite McFaddin's diligent and professional performance, Dr. Pumphrey cursed at McFaddin, snatched items from McFaddin's hands,

aggressively confront McFaddin, and pointed his fingers at McFaddin in a threatening manner.

90.

Repeated assaults and batteries, which were willful, intentional, and directed towards Plaintiffs by Dr. Pumphrey for reasons personal to Dr. Pumphrey, proceeded from anger, rudeness, and/or lust.

91.

When Plaintiffs complained about unlawful employment practices and unprofessional mistreatment, Defendants further subjected Stewart to retaliatory adverse employment actions.

92.

Although Plaintiffs complained about the assaults, batteries, professional mistreatment, and threatening conduct, Defendants failed to take any remedial action.

93.

As a direct result of the repeated offensive assaults, batteries, professional mistreatment, and threatening conduct by Dr. Pumphrey, Plaintiffs reasonably apprehended a violent injury and/or battery.

94.

All apparent circumstances, reasonably viewed, were such as to lead a person to reasonably apprehend a violent injury and/or battery from the unlawful conduct of Dr. Pumphrey.

95.

Dr. Pumphrey was not privileged, authorized, or justified when repeatedly assaulting, battering, and threatening Plaintiffs.

96.

When repeatedly assaulting and battering Plaintiffs, Dr. Pumphrey was performing within the scope of their employment with Pumphrey Periodontics.

97.

As the direct and proximate result of Defendants' intentional, willful, unlawful, and tortious conduct, Plaintiffs have suffered, among other things, fear, humiliation, embarrassment, mental anguish, physical injuries, and damages in an amount to be determined at trial.

98.

Defendants' tortious actions and conduct were undertaken in bad-faith.

99.

The assaults and batteries to which Plaintiffs were subjected by Defendants entitles Plaintiffs to all appropriate relief afforded under the law.

100.

Defendants' actions with respect to Plaintiffs have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Plaintiffs are entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT V**
**BREACH OF CONTRACT**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(McFaddin and Stewart Against Defendants)**

101.

Under Georgia law, a contract is an agreement between two or more parties for the doing or not doing of some specific thing and an action lies for breach of said contract with damages given as compensation for injuries sustained.

102.

McFaddin and Defendants entered into the agreement, wherein McFaddin agreed to provide professional treatment coordinator services to Defendants in exchange for a $2,500 bonus, increase in pay to $27.00 (and later $36.00) per hour, at least 72 hours (and later 80 hours) biweekly, and improved professional treatment.

103.

Likewise, Stewart and Defendants entered into the agreement, wherein Stewart agreed to provide professional dental assistant services to Defendants in exchange for $25.00 (initially) per hour compensation.

104.

The agreements, which were assented to by all parties, as well as supported by good and valuable consideration, constitutes Defendants' unconditional promise to make certain monetary payments, schedule certain hours, and improve professional treatment in exchange for McFaddin's professional treatment coordinator services and Stewart's professional dental assistant services.

105.

Despite the plain terms of the agreements, Defendants breached, in bad faith, the agreements when refusing to make the required monetary payments, schedule the agreed-upon hours, and professionally mistreating McFaddin and Stewart.

106.

Notwithstanding Defendants' breaches of the plain terms of the agreements, McFaddin and Stewart continued to provide Defendants with diligent and competent professional treatment coordinator services and dental assistant services, respectively, pursuant to the terms of the agreements.

107.

As a direct and proximate result of Defendants' breach of the agreement, McFaddin and Stewart have been damaged in the amount of lost wages, earnings, and benefits of employment.

## COUNT VI
## NEGLIGENT TRAINING, RETENTION, AND SUPERVISION
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Plaintiffs Against Defendants)

108.

Georgia law provides that employers must exercise ordinary care in the training, retention, and supervision of employees.

109.

As a result of the actions taken by Defendants' employees, including, but not limited to, Dr. Pumphrey and Flowers, Plaintiffs suffered, among other things, professional harassment, assaults, batteries, and other damages.

110.

Defendants owed McFaddin and Stewart a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in unlawful or tortious conduct.

111.

By negligently retaining and supervising Defendants' employees, including, but not limited to, Dr. Pumphrey and Flowers, Defendants breached the duty to hire, retain, and supervise an employee who would lawfully behave.

112.

Defendants knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but not limited to, Dr. Pumphrey and Flowers, to engage in unlawful conduct against McFaddin and Stewart.

113.

Additionally, by failing to engage in any corrective or remedial action, Defendants ratified, condoned, and/or adopted its employees' unlawful conduct.

114.

As a direct and proximate result of Defendants' negligent training, retention, and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Pumphrey Periodontics' employees, McFaddin and Stewart suffered damages.

115.

Defendants' negligent conduct entitles McFaddin and Stewart to compensatory damages, as well as any and all other remedies available under the law.

## COUNT VII
## PIERCING THE CORPORATE VEIL
## PURSUANT TO THE LAW OF THE STATE OF GEORGIA
### (Plaintiffs Against Defendants)

116.

Corporate owners or shareholders are not personally liable for corporate acts until such time as the corporate veil has been pierced, when shareholders have disregarded the corporate entity and made it a mere instrumentality for the transaction of personal affairs, as well as there is unity of interest and ownership that the separate personalities of the corporation and the owners no longer exists.

117.

Dr. Pumphrey is the alter ego of Pumphrey Periodontics, which is owned, dominated, and otherwise controlled solely by Dr. Pumphrey.

118.

When formed, Dr. Pumphrey was the sole member and operator of Pumphrey Periodontics.

119.

Since formation, Pumphrey Periodontics corporate deals and relationships have mirrored those of Dr. Pumphrey.

120.

Since formation, Dr. Pumphrey served as chief executive officer, chief financial officer, and secretary of Pumphrey Periodontics—Dr. Pumphrey controls the day-to-day operations of Pumphrey Periodontics.

121.

Upon information and belief, since formation, Dr. Pumphrey has failed to adhere to prevailing corporate practices, including, but not limited to, meetings, the issuance of shares, corporate records and minutes, delivery of annual registration and fees, and/or compliance with the requirements of Official Code of Georgia Annotated.

122.

Pumphrey Periodontics has been administratively dissolved by Georgia's Secretary of State.

123.

Dr. Pumphrey has disregarded the corporate entity of Pumphrey Periodontics o make it a mere instrumentality of Dr. Pumphrey's personal affairs.

124.

There has been a unity of interest and ownership such that the separate personalities of Dr. Pumphrey and Pumphrey Periodontics do not exist.

125.

Since formation, Dr. Pumphrey has continuously disregarded the corporate entity of Pumphrey Periodontics for his own personal benefit.

126.

Dr. Pumphrey is utilizing Pumphrey Periodontics to evade, *inter alia*, contractual and tort responsibility to McFaddin.

127.

Dr. Pumphrey is utilizing Pumphrey Periodontics to hinder, delay, and defraud creditors, including McFaddin and Stewart.

128.

Dr. Pumphrey has continuously utilized Pumphrey Periodontics as a sham to justify wrongful actions, including tortious and fraudulent committed against McFaddin and Stewart.

129.

Based on the actions of Defendants, a fraud would result if the corporate structure of Pumphrey Periodontics were permitted to shield Dr. Pumphrey from personal liability from Stewart and McFaddin.

## COUNT VIII
## ATTORNEY'S AND LITIGATION EXPENSES
## PURSUANT TO THE LAWS OF THE STATE OF GEORGIA
### (Plaintiffs Against Defendants)

130.

Under Georgia law, the expenses of litigation are allowed, where the plaintiff has specially plead and has made prayer thereof and where the defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the plaintiff unnecessary trouble and expenses.

131.

Defendants and McFaddin entered into the agreement, wherein Defendants agreed to pay McFaddin a $2,500 bonus, increase McFaddin's pay to $27.00 (and then $36.00) per hour, at least 72 hours (and then 80 hours) biweekly, and improved professional treatment for McFaddin's professional Treatment Coordinator services.

132.

Likewise, Defendants and Stewart entered into the agreement, wherein Defendants agreed to pay Stewart $25.00 per hour for Stewart's professional Dental Assistant services.

133.

Plaintiffs provided Defendants with professional Treatment Coordinator and Dental Assistant services.

134.

Although receiving professional Treatment Coordinator and Dental Assistant services from McFaddin and Stewart pursuant to the terms of the agreements, Defendants have, in bad faith, challenged the existence of the agreement while falsely disputing McFaddin's and Stewart's rights to receive certain compensation in accordance with the agreements.

135.

Since execution of the agreement, Defendants have repeatedly, maliciously, and fraudulently challenged the existence of the agreement and McFaddin's entitlement to receive compensation pursuant to the terms of the agreement.

136.

Despite the agreements and Dr. Pumphrey's verbal assertions, Defendants have fraudulently, maliciously, and stubbornly challenged, in bad faith without any cause in law or fact, the existence of the agreements and Plaintiffs' entitlement to receive certain compensation, resulting in unnecessary trouble, expense, and litigation.

137.

As a result of Defendants' bad faith, stubborn litigiousness, and unnecessary trouble, Plaintiffs are entitled to recover the expenses of litigation associated with the above-captioned case and the challenges to the agreements.

### COUNT IV
### PUNITIVE DAMAGES
### PURSUANT TO THE LAWS OF THE STATE OF GEORGIA
**(Plaintiffs Against Defendants)**

138.

In tort actions, there may be aggravating circumstances that may warrant the awarding or imposing of additional damages called punitive damages.

139.

Defendants have committed assault, battery, and other intentional wrongful acts, as described and alleged herein.

140.

Defendants' actions when committing assault, and battery and the other intentional wrongful acts, as described and alleged herein, showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care rising to the level of the conscious indifference and disregard for any consequences.

141.

When seeking to retaliate and punish Plaintiffs, Defendants committed multiple torts while engaging in wrongful conduct.

142.

Punitive damages are required to punish, penalize, and deter Defendants from engaging in future willful misconduct, malice, fraud, wantonness, and oppression.

143.

Plaintiffs are each entitled, pursuant to O.C.G.A. § 51-12-5.1, to an award of punitive damages in the amount of $250,000.00.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiffs' rights under, among other laws, the FLSA and Georgia law, were violated;

(c)     That the Court award Plaintiffs compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of the FLSA;

(f)     That the Court award attorney's fees and litigation expenses (pursuant to Georgia law and the FLSA) associated with the above-captioned case;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 5th day of May, 2022.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiffs Laneice S. McFaddin and
Melissa S. Stewart*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LANEICE S. MCFADDIN and MELISSA L. STEWART, | |
| Plaintiffs, | |
| vs. | CIV. ACTION NO._____ |
| DAVID W. PUMPHREY DDS PC, also known as Pumphrey Periodontics and doing business as Pumphrey Periodontics and Dental Implant Therapy, and DAVID W. PUMPHREY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 5th day of May, 2022.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
T. ORLANDO PEARSON
Georgia Bar No. 180406